UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Omar de Jesus Bermudez Navarrete

Petitioner,

v.

Sergio Albarran, et al.,

Respondents.

Case No. 3:26-cv-07444

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 2.

Petitioner Omar de Jesus Bermudez Navarrete moves the Court *ex parte* for a temporary restraining order that would, among other things, require his immediate release from ongoing detention by agents of Immigration and Customs Enforcement ("ICE").[1] For the reasons set forth below, the Court grants the requested order. The Court orders respondents to release petitioner from ongoing detention and prohibits respondents from re-arresting or otherwise re-detaining petitioner without first providing a pre-detention bond hearing before an immigration judge at which the government establishes by clear and convincing evidence that petitioner's detention is necessary to prevent his flight or to protect the public.

**BACKGROUND**

The evidence before the Court establishes that petitioner, a non-citizen and native of El Salvador, entered the United States in approximately 2021. For the past five years, petitioner has

---

[1] Petitioner asks the Court to order that he remain within the Northern District of California in order to preserve this Court's jurisdiction over his petition. But it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004). Petitioner also requests that the Court prohibit his deportation during the pendency of the underlying case. At this time, however, the threat of deportation is too remote to warrant emergency *ex parte* relief.

resided in the United States. Petitioner states that he is the "sole provider for his wife, two year old US citizen child and seventeen year old nephew." Petition ¶ 5. According to the petition, "Petitioner's wife is six months pregnant and unable to work." Petition ¶ 5. Petitioner has no criminal record. *Id.* He has filed an application for asylum and states that he has received authorization to work in the United States. Dkt. 2-1 ¶ 7; Petition ¶ 6.

On July 17, 2026, petitioner was arrested and detained outside of his apartment building in San Francisco, California. Dkt. 2-1 ¶¶ 5–6. Petitioner and his wife asked to see the warrant the ICE officers claimed to have supporting his arrest. *Id.* ¶ 6. ICE agents told them that the warrant was at the ICE office and did not present a warrant to petitioner at the time of his arrest. *Id.* ¶ 6. ICE agents arrested him. In his TRO application, petitioner explains that the warrant for his arrest was produced only several hours after the arrest. *Id.* ¶¶ 8–9. Petitioner asserts that the warrant "describes facts that came into existence only after the arrest was completed-not at the time the warrant was purportedly created." *Id.* Petitioner is currently being held at ICE's San Francisco field office at 630 Sansome Street. *Id.* ¶ 4.

Petitioner, with representation of counsel, filed a petition for a writ of habeas corpus and *ex parte* motion for a temporary restraining order on July 17, 2026. He contends that his arrest and detention violate 8 U.S.C. § 1357(a)(2), the Fourth Amendment, and the Fifth Amendment. The respondents are Sergio Albarran, Director of ICE's San Francisco Field Office; David J. Venturella, Acting Director of ICE; Secretary of Homeland Security Markwayne Mullin; and Acting Attorney General Todd Blanche.

## LEGAL STANDARDS

The standard for issuing a temporary restraining order is largely identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Petitioners seeking such relief must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on

2

the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest— merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

Although the substantive standards for both motions are similar, the timeframe for a temporary restraining order is different. While a preliminary injunction remains in effect pending final resolution of the litigation, "a TRO 'should be restricted to … preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

Federal Rule of Civil Procedure 65(b)(1) allows a temporary restraining order to be issued without notice to the opposing party—i.e., *ex parte*—only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

**ANALYSIS**

As an initial matter, petitioner has satisfied the requirements for issuance of an *ex parte* order. The affidavit of petitioner's counsel demonstrates that petitioner will suffer immediate and irreparable injury, loss, or damage by virtue of his continued detention before respondents can be heard in opposition, and that counsel attempted to contact Civil Division chief Pamela Johann of the United States Attorney's Office for the Northern District of California on July 17, 2026.

With respect to the showing required to justify petitioner's requested relief, he has demonstrated a likelihood of success on the merits of his claim that his ongoing detention violates his rights under the Due Process Clause of the Fifth Amendment. The Court recently considered similar circumstances in *Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, __ F. Supp. 3d __,

2025 WL 2935630 (N.D. Cal. Oct. 15, 2025). For the reasons explained in far greater detail therein, a noncitizen like petitioner residing in the United States with the federal government's knowledge and acquiescence has a significant liberty interest in remaining out of immigration custody. *Id.* at *5.[2] The statutory procedures potentially available to petitioner do not satisfy that constitutional mandate. Even assuming that petitioner will receive a post-arrest bond hearing before an immigration judge, there remains a substantial risk that the government is erroneously depriving him of his liberty in the meantime, as the available record suggests that petitioner is neither a flight risk nor a danger to the public. Indeed, it appears the government has been aware of petitioner's presence in the country for a significant period of time as a result of his asylum application, has taken no steps to detain him during that time, and may have granted him work authorization. *See id.* at *8; *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Given the apparent lack of a valid basis on which to detain petitioner and the limited cost of providing a custody hearing in immigration court, the government has at most a minimal countervailing interest in his continued detention. *See Pablo Sequen*, 2025 WL 2935630 at *12; *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1036 (N.D. Cal. 2025). Taken together, the strength of petitioner's liberty interest, the high likelihood of erroneous deprivation, and the government's minimal countervailing interest demonstrate that petitioner is likely to succeed on the merits of his due-process claim. *See Pablo Sequen*, 2025 WL 2650637 at *12; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief due to his ongoing and likely unconstitutional deprivation of liberty. "The loss or threatened infringement upon [constitutional] rights for even minimal periods of time unquestionably constitutes irreparable injury." *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th

---

[2] Because petitioner is "challenging their detention[], not the processes by which applications for admission [into the United States] are decided , … the cases limiting the due process rights of noncitizens to challenge how applications for admission are decided are inapplicable." *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *1 (N.D. Cal. Sept. 26, 2025). Even if petitioner were challenging such processes, the Fifth Amendment would still entitle him to due-process protections because he has resided in the United States for five years—certainly long enough to "begin[] to develop … ties" and become "a part of our population." *Pablo Sequen v. Albarran*, 2025 WL 2935630, at *5 (first quoting *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); and then quoting *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903)).

4

Cir. 2019) (citation modified). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified). "[I]t follows inexorably from [the Court's] conclusion" that petitioner "will likely be deprived of [her] physical liberty unconstitutionally in the absence of the injunction ... that [he] ha[s] also carried [her] burden as to irreparable harm." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

The final two *Winter* factors, the balance of the equities and public interest, merge because the government is the opposing party. These factors also weigh heavily in favor of granting a temporary restraining order. "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird*, 81 F.4th at 1042 (citation modified). Further, "the Ninth Circuit has recognized that 'the costs to the public of immigration detention are staggering.'" *Jorge M. F. v. Wilkinson*, No. 21-CV-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (citation modified) (quoting *Hernandez*, 872 F.3d at 996). And where petitioner is suffering irreparable harm while in detention, the potential harm to the government—at worst, a short delay in detaining petitioner until it makes the requisite showing of necessity before a neutral decisionmaker—is minimal. *See id.* at *3; *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). In any case, enjoining the government from constitutional violations does not impose harm "in any legally cognizable sense." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).

Finally, petitioner's immediate release is required to return her to the status quo. The "status quo" refers to the state of the parties' relationship "before the action challenged in the complaint occurred." *Youth 71Five Ministries v. Williams*, 153 F.4th 704, 717 (9th Cir. 2025), *as amended*. Here, that is the moment prior to petitioner's likely illegal detention. *See Pablo Sequen*, 2025 WL 2650637, at *4 n.2; *Kuzmenko v. Phillips*, No. 25-CV-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Because petitioner satisfies all of the requirements for temporary injunctive relief and such

relief is necessary to restore the status quo, the motion for a temporary restraining order requiring his immediate release is granted. *See Pablo Sequen v. Kaiser*, No. 25-CV-06487-PCP, 2025 WL 2203419, at *3 (N.D. Cal. Aug. 1, 2025) (collecting similar cases).[3] And because "there is no realistic likelihood of harm to the [respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security is needed to ensure that respondents will be reimbursed for "costs and damages sustained by … hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that petitioner's motion for a temporary restraining order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents are **ORDERED** to immediately release petitioner from custody and are **ENJOINED AND RESTRAINED** from re-detaining petitioner without first providing a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that petitioner's detention is necessary to prevent his flight or to protect the public. Should respondents choose to conduct such a hearing, respondents are **ORDERED** to provide petitioner with reasonable advance notice of the time and place of the hearing.

This Order shall remain in effect until July 31, 2026. The Petition for Writ of Habeas Corpus, Dkt. No. 1, Motion for Temporary Restraining Order, Dkt. No. 2, and this Order **SHALL** be served on respondents such that they receive actual notice as soon as possible. Petitioners shall file proof of service or a status report by no later than July 18, 2026, at 5:00pm. Respondents shall provide a status report confirming the release of Navarrete by no later than July 18, 2026, at 5:00pm.

Respondents are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue in favor of petitioner. The hearing will be held in the courtroom of the assigned Judge, or

---

[3] Because an order of immediate of immediate release based on a likely violation of petitioner's due process rights is sufficient to address the exigent circumstances presented here, the Court need not address petitioner's other grounds for challenging the lawfulness of his detention.

United States District Court
Northern District of California

as otherwise ordered by that Judge, on Tuesday, July 28, 2026. Respondents shall file a response to petitioner's motion by no later than Wednesday, July 22, 2026. Any reply shall be filed by Monday, July 27, 2026.

**IT IS SO ORDERED.**

Dated: July 17, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California